**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| *In re* | § | |
| | § | |
| GARY L. ZARS., | § | |
| | § | |
| *Debtor* | § | |
| | § | |
| TEXAS COMPTROLLER OF PUBLIC | § | |
| ACCOUNTS, | § | |
| | § | |
| *Appellant,* | § | |
| | § | |
| v. | § | Civil Action No.  SA-09-CV-661-XR |
| | § | |
| GARY L. ZARS, | § | |
| | § | |
| *Appellee.* | § | |

**ORDER**

On this date, the Court considered the appeal of the Appellant Texas Comptroller of Public

Accounts from an order of the bankruptcy court that granted Appellee Gary L. Zars's motion for an

amended application for fees.  After considering the record, applicable law, and the arguments of

counsel, the order of the bankruptcy court is REVERSED IN PART AND AFFIRMED IN PART.

**I.  Background**

This is an appeal from an order of the Bankruptcy Court of the Western District of Texas,

San Antonio Division, entered on July 14, 2009, in *In re Gary L. Zars*, No. 07-52449-RBK.[1]  On

July 13, 2009, the bankruptcy court considered Appellee Gary L. Zars's ("Zars") "Application for

Compensation and Reimbursement of Expenses of Richard P. Corrigan, Counsel for the Debtor, and

_____

[1]*See* Docket Sheet, *In re Gary Zars*, No. 07-52449-RBK (Bankr. W.D. Tex. filed Sept. 19, 2007) (R. Item 7).

Hearing Thereon."[2]  The bankruptcy court granted the motion after a hearing on July 13, 2009, and entered its order on the following day.[3]

Debtor Gary L. Zars filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code on September 19, 2007, case no. 07-52449-RBK ("2007 case").  He was represented by Richard L. Corrigan, who had represented Mr. Zars in previous bankruptcy cases.[4] Mr. Zars's Chapter 13 plan in the 2007 case was never confirmed because he failed to file any previously unfiled tax returns for the four years prior to bankruptcy by the day before the first meeting of the creditors pursuant to 11 U.S.C. § 1308(a).  That meeting took place on October 31, 2007, and the Appellant, the Texas Comptroller of Public Accounts ("Comptroller"), moved to dismiss the case on February 14, 2008, for failure to take account of Mr. Zars's federal tax claims, priority state tax claims, or local ad valorem claims.[5]  The bankruptcy judge therefore dismissed the 2007 case and entered the order of dismissal on December 3, 2008.[6]  When the 2007 case was dismissed, the Chapter 13 trustee held an estate of approximately $140,000 in pre-confirmation plan payments that had been made by Mr. Zars but not yet distributed to creditors.[7]

---

[2]App. for Compensation & Reimbursement of Expenses of Richard P. Corrigan, Counsel for the Debtor & Request for Hr'g Thereon, Jun. 4, 2009 (R. Item 1); Am. App. for Compensation & Reimbursement of Expenses of Richard P. Corrigan, Counsel for the Debtor, Request for an Order Directing the Chapter 13 Trustee to Transfer Funds to this Case, & Request for Hr'g Thereon, Jul. 2, 2009 (R. Item 3).

[3]Order Awarding Compensation & Authorizing Reimbursement of Expenses of Counsel for the Debtor, Jul. 14, 2009 (R. Item 5).

[4]Hr'g Tr. 36–37, July 13, 2009 (R. Item 6) (hereinafter "Tr.").

[5]*Id.* at 25–27, 32–33; Bankr. Docket Nos.14, 18, 44.

[6]R. Item 7; Bankr. Docket No. 133.

[7]Tr. 4–5.

2

On the day after the 2007 case was dismissed, Zars filed a fourth Chapter 13 petition, case no. 08-53699-RBK ("2008 case"), in which Mr. Corrigan again represented him.[8]  The Comptroller at this point had asserted tax claims of over $982,237.92 against Zars, an amount which he disputes.[9]  To secure these claims, the Comptroller also filed tax lien notices in all counties where Zars has scheduled property ownership interests and perfected liens on all non-exempt property on the day between the dismissal of the 2007 and the petition for the 2008 case.[10]

The Comptroller filed a Motion to Prohibit Use of Cash Collateral, seeking to bar Mr. Zars from using the approximately $126,509 left in the trustee's account on December 5, 2008, based on the fact that the liens the Comptroller had perfected constituted the Comptroller's collateral.[11]  The motion was granted on December 19, 2008.[12]  The Comptroller filed a motion to dismiss the 2008 case, alleging that Zars's debts exceeded the limits for Chapter 13 debtors under 11 U.S.C. § 1309.[13]  Zars converted his case into a Chapter 11 action on April 6, 2009.[14]

---

[8]*See* Docket Sheet, *In re Zars*, No. 08-53699 (Bankr. W.D. Tex. filed Dec. 4, 2008) (R. Item 8).

[9]Comptroller's Exhibits Ex. 11 (R. Item 5).  The Court recognizes that the Comptroller has asserted in its briefs and statements tax claims of over $1.1 million.  However, the only reference in the record is to proof of claim from August 6, 2008, listing the claim at $982,237.92.  There is likely interest or other payments due on this amount that causes the total to reach $1.1 million under a statutory or tax guideline, but the Court has no specific documentation in support of this amount before it.

[10]*Id.* Ex. 7.

[11]Tex. Comptroller's Mot. to Prohibit Use of Cash Collateral, Dec. 5, 2008 (R. Item 9); *see* R. Item 8 (referring to Bankr. Docket No. 5).

[12]*See* R. Item 8 (referring to Bankr. Docket No. 30).

[13]*See id.* (referring to Bankr. Docket No. 9).

[14]*See id.* (referring to Bankr. Docket Nos. 79, 80).

After the conversion to the Chapter 11 bankruptcy, Zars sought to use $50,000 of the 2008 estate funds to pay for new counsel in the Chapter 11 case and to post a bond with the Comptroller.[15] On June 4, 2009, the bankruptcy court granted the motion to use those funds, but also granted the Comptroller all security interests and post-petition liens owned by Zars as adequate protection for the Comptroller's cash collateral in the estate.[16]

Even at this late date, Richard Corrigan, Zars's attorney in the 2007 and 2008 cases, had not been paid, except for reimbursement of filing fees. He was listed as a priority creditor on both of Zars's bankruptcy plans because he had submitted applications for payment to the tune of $4,200 in each case pursuant to Federal Rule of Bankruptcy Procedure 2016(b) but had not received those payments. On April 22, 2009, Mr. Corrigan filed an application in the 2008 case for fees and expenses, relating mostly to the 2007 case, seeking $18,335.27 from the bankruptcy estate held by the Chapter 13 trustee.[17] Bankruptcy Judge Ronald King denied the application, presumably due to the Comptroller's objection that Mr. Corrigan's fees related to the 2007 case rather than the 2008 case, but without prejudice to it being re-filed in the 2007 case.[18] On June 3, Bankruptcy Judge King reopened the 2007 case.[19]

On June 5, Mr. Corrigan re-filed his application for fees and expenses in the reopened 2007

---

[15]Mot. for Authority to Use Funds Held by Trustee, Aug. 30, 2009 (R. Item 14).

[16]Order Authorizing Debtor to Use Funds Held by Trustee, Jun. 4, 2009 (R. Item 16).

[17]R. Item 11.

[18]Order Denying Application Without Prejudice, Jun. 2, 2009 (R. Item 13); see also Tex. Comptroller's Objection to Application for Compensation of Debtor's Counsel, Apr. 23, 2009) (R. Item 12).

[19]See R. Item 7 (referring to Bankr. Docket No. 147).

4

case.[20]   The Comptroller objected on the grounds that (1) granting attorney's fees for work done on the 2007 case from funds in the estate created by the 2008 bankruptcy filing amounted to unauthorized payment of a pre-petition claim and that (2) there was lack of adequate protection for a proposed use of cash collateral.[21]   The bankruptcy judge held a hearing on July 13, 2009, and granted the application on July 14, 2009, to pay Mr. Corrigan from the funds held by the Chapter 13 trustee.[22]

## II.  Procedural History

The Comptroller appealed the decision to this Court.  The Appellant, Texas Comptroller of Public Accounts, and Appellee, Gary L. Zars, have both briefed the Court.[23]

## III.  Issues on Appeal

The Comptroller raises three issues on appeal: (1) whether the payment of fees to Debtor's counsel for the 2007 case from the assets of the 2008 bankruptcy estate constitutes an unauthorized payment; (2) whether the bankruptcy court erroneously ordered payment from the Comptroller's cash collateral; and (3) whether the bankruptcy court abused its discretion in granting counsel's fee request without requiring disclosure of the full amount according to Section 329 of Title 11, United States Code, and Rule 2016(b) of the Federal Rules of Bankruptcy Procedure.

## IV.  Jurisdiction

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

---

[20]R. Item 1.

[21]R. Item 2.

[22]R. Items 4, 6.

[23]Appellant's Br., Aug. 24, 2009 (Docket No. 3); Appellee's Br., Sept. 4, 2009 (Docket No. 4); Appellant's Reply Br., Sept. 10, 2009 (Docket No. 5).

## V.  Legal Standard

This Court "acts in an appellate capacity" in reviewing the findings and orders of the bankruptcy court.  *In re Perry*, 345 F.3d 303, 308 (5th Cir. 2003) (citing *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992)); *see also* 28 U.S.C. § 158(a).  A bankruptcy court's conclusions of law are reviewed *de novo*.  *In re Barron*, 325 F.3d 690, 692 (5th Cir. 2003).  The bankruptcy court's factual findings, however, are reviewed for "clear error," meaning that the "bankruptcy court's factual findings must be upheld unless, considering all the evidence, this court forms 'a definite and firm conviction that a mistake has been made.'"  *In re Coppola*, 419 F.3d 323, 326 (5th Cir. 2005) (quoting *In re Young*, 995 F.2d 547, 548 (5th Cir. 1993)).  Where there is a mixed question of law and fact, such as the determination of whether compensation should be denied counsel in a bankruptcy case, the Court reviews the decision for an abuse of discretion.  *See In re Prudhomme*, 43 F.3d 1000, 1003–04 (5th Cir. 1995).

## VI.  Analysis

### A.  Whether the payment of fees to debtor's counsel for the 2007 case from the assets of the bankruptcy estate of the 2008 case constitutes an unauthorized payment.

*1.  The creation of an estate under 11 U.S.C. § 541*

Section 301 of Title 11, U.S.C., provides that a voluntary bankruptcy case "is commenced by the filing with the bankruptcy court of a petition."  11 U.S.C. § 301(a).  When the case commences, it creates an estate under Section 541(a) automatically.[24]  The estate is comprised of "all

---

[24]The pertinent part reads:
(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such an estate is comprised of all the following property, wherever located and by whomever held:
(1) Except as provided in subsection (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
11 U.S.C. § 541.

legal or equitable interest of the debtor in property as of the commencement of the case," wherever located and by whomever held.  *Id.* § 541(a)(1); *see also Ga. Pac. Corp. v. Sigma Servs. Corp.*, 712 F.2d 962, 966 (5th Cir. 1983).  Such property interests include any of the debtor's claims, which should be broadly construed to include any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal equitable secured, or unsecured."  11 U.S.C. § 101(5); *see La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988).  Anyone holding any kind of debt due to the estate and payable to the estate shall turn it over to the bankruptcy trustee to be incorporated into the estate.  *See* 11 U.S.C. § 542; *see also United States v. Whiting Pools,* 462 U.S. 198, 205–06, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).  The dismissal of a bankruptcy case reverses this process, as the dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case" unless the court orders otherwise.  11 U.S.C. § 349.

Here, Zars commenced two bankruptcy cases in quick succession.  The funds of the bankruptcy estate associated with his first 2007 case were supposed to return to him upon dismissal of the case on December 3, 2008.  Although Mr. Zars did not receive those funds, he did acquire a legal interest amounting to a vested right to payment of the 2007 estate funds at the point of dismissal.  When Zars filed a new bankruptcy petition on December 4, 2008, a new 2008 bankruptcy estate sprang into being.  Under Section 542, whoever held the right to payment of the 2007 estate wherever those funds were located was compelled to turn over that claim to the 2008 estate.  Since the Chapter 13 trustee still held the 2007 estate's funds, the trustee was compelled to transfer those funds over to the 2008 case's estate and did so.[25]  Thus, Mr. Zars's first bankruptcy estate was

_____

[25]There is no clear indication included in the record of when the Chapter 13 trustee transferred the funds between the 2007 case and the 2008 case.  There is some testimony at the

properly incorporated into the 2008 estate just like all his other substantial assets and incomes.

Both Mr. Zars and Mr. Corrigan took actions that acknowledged their understanding that the 2008 estate had incorporated the funds of the 2007 estate. Zars scheduled the 2007 estate funds as his property in his 2008 case filings, and he moved in the 2008 case to use the funds held by the Chapter 13 trustee to pay his new counsel and to post a bond.[26] Mr. Corrigan originally tried to collect fees from the 2008 estate and not the 2007 estate.[27] He only attempted to apply for compensation out of the 2007 funds when it was clear he was not entitled to payment from the 2008 estate because his legal work for Zars did not concern the 2008 case.[28]

However, once Zars filed the new bankruptcy case, the nature of Mr. Corrigan's claim changed as well. Similar to Mr. Zars's right to payment of the 2007 estate, Mr. Corrigan's claim for payment of legal fees associated with his work on the 2007 case vested upon dismissal of that case. Any claim based on a right to payment that vested before the commencement of the bankruptcy case becomes a pre-petition claim as soon as the new bankruptcy case begins. *In re Oxford Mgmt.*, 4 F.3d 1329, 1335 n.7 (5th Cir. 1993). Basically, when a bankruptcy case begins, everyone to whom the debtor owed money before he filed for that particular bankruptcy becomes a general creditor with

---

hearing concerning a lack of knowledge about when exactly the transfer occurred, but clearly the trustee had moved the funds by April 22, 2009, when Mr. Corrigan first applied for fees. *See* Tr. 6–7. Contrary to some implications given by the bankruptcy court, the trustee was not only permitted, but obligated to 'unilaterally shift' the money into the 2008 estate pursuant to the Bankruptcy Code.

[26]Debtor's Schedule B-Personal Property no. 1, May 1, 2009 (R. Item 17) (referring to Chapter 13 Trustee account as cash on hand in the amount of $139,839.77); Order Authorizing Debtor to Use Funds Held by Trustee, Jun. 4, 2009 (R. Item 16).

[27]R. Item 11.

[28]R. Item 13.

a general pre-petition claim.  This is true even when the debtor has filed successive bankruptcy claims.  *See In re Jartran*, 886 F.2d 859, 869–70 (7th Cir. 1989) (claims concerning bankruptcy cases prior to the succeeding case are still pre-petition claims *vis-a-vis* that later case); *In re Larsen*, 59 F.3d 783, 787–88 (8th Cir. 1995) (counsel seeking fees concerning work done in earlier bankruptcy only had a pre-petition claim in the later bankruptcy estate).

2.     *Priority of administrative fees in successive bankruptcy cases*

Mr. Corrigan argues that his 2007 claim is an administrative claim and therefore maintains first priority in payment from the bankruptcy estate despite the commencement of the 2008 case.[29] This contention is a misreading of the Bankruptcy Code.  The Code provides that "reasonable compensation shall be allowed the debtor's attorney for representing the interests of the debtor *in connection with the bankruptcy case* based on a consideration for the benefit and necessity of such services to the debtor and other factors."  11 U.S.C. § 330 (a)(4)(B) (emphasis added).  Section 503(b)(2) explains that these claims to payment under Section 330 are administrative claims and are, under Section 507(a)(2), granted priority in receiving payment.  Therefore, Mr. Corrigan held a priority administrative claim for his legal work on the 2007 case.  However, as Section 330(a) indicates, this priority claim to payment from the bankruptcy estate is only a priority claim in *that* 2007 case for which Mr. Corrigan performed legal work, not in the 2008 case.

Cases address administrative priority provisions in successive bankruptcy filings.  In *In re Jartran*, the Fruehauf company, like Mr. Corrigan, had administrative priority in the first of Jartran's bankruptcies for work Fruehauf performed for the debtor in the first bankruptcy.  When Jartran filed again for bankruptcy after losing a costly court case before the completion of the original plan,

---

[29]Appellee's Br. 3.

Fruehauf tried to maintain administrative priority in the second bankruptcy for its claims connected to the first proceeding.  The Seventh Circuit Court of Appeals explained, however, that "administrative priority in *Jartran I* does not translate to administrative priority in *Jartran II*." *Jartran*, 886 F.2d at 870.  Similarly, in *In re Larsen*, an attorney with administrative priority claims for work on the plaintiff's two prior bankruptcies sought payment from the estate of the plaintiff's current bankruptcy proceedings but was denied because the basis for the attorney's claim was the prior bankruptcy. *Larsen*, 59 F.3d at 783.  The attorney's claims represented only pre-petition claims in the pending bankruptcy.

Mr. Corrigan acknowledges his legal services were not in connection with the bankruptcy case at hand.[30]  His right to payment no longer has the administrative priority it once had, and so has to be adjudicated on the pro-rata basis envisioned by the bankruptcy code alongside all other creditors' claims. *Oxford*, 4 F.3d at 1335 n.7.  He should have filed for payment out of the 2007 estate when that case was dismissed or earlier under Section 1326(b) if he wanted to protect his right to payment in a case such as this, where debts exceed assets.[31]

3.     *Authority of the bankruptcy court under § 105(a) to transfer funds from a bankruptcy estate*

Mr. Corrigan's alternative contention is that the bankruptcy judge had the power to transfer funds from the 2008 estate to the reopened 2007 case.[32]  He argues that this case is distinguished from other similar cases like *Jartran* or *Larsen* discussed above because here the bankruptcy judge

---

[30]R. Item 1.

[31]Under Section 1326(b), the debtor's counsel is entitled to payment as soon as or before the debtor begins plan-payments to creditors.

[32]Appellee's Br. 3.

10

reopened the original case.[33]  Indeed, the powers of the bankruptcy court are broad and the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Although the exact extent of these equity powers is not precisely delineated, the bankruptcy court is certainly within its authority to reopen the original case for cause or retain power over a bankruptcy estate after the dismissal of a case, as the appellee argues.  *See, e.g., In re Gonic Realty Trust*, 909 F.2d 624, 627 (1st Cir. 1990).  However, authority is clear that a judge certainly may not exceed or violate the Bankruptcy Code itself.  *See generally,* 2 COLLIER ON BANKRUPTCY ¶ 105.01[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  The bankruptcy court is not "a roving commission to do equity" and cannot violate the Code or its purposes by "elevating the status of the appellees above that of the other general unsecured creditors."  *Oxford*, 4 F.3d at 1334 (citing *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)).

The bankruptcy judge erroneously ordered the payment of the general unsecured pre-petition claims of Mr. Corrigan before paying the higher priority claims held by other creditors such as the Comptroller.  Bankruptcy Judge King ruled that the 2007 estate "was subject to any administrative or other claims in the '07 case prior to it being transferred on the books of the trustee to the '08 case."[34]  This violates Sections 541 and 542 as explained above because those provisions stipulate that the 2007 estate no longer exists and that those claims originally from the 2007 case are now pre-petition claims in the 2008 case.  Just like in *Oxford Management*, there is no reference to a "provision of the Code that would allow the payment of post-petition funds to satisfy pre-petition

---

[33]*Id.* at 4.

[34]Tr. 52; *see also, Brief of Appellee* at 3.

claims." *Oxford*, 4 F.3d at 1334.  The 2007 estate no longer exists even if the funds technically remain listed under the same bank account number.[35]

Giving priority to the payment of a pre-petition claim from a previously closed bankruptcy case would also impermissibly alter the goals of the Bankruptcy Code.  The legislature established in the Code for all bankruptcy claims to be adjudicated on a pro rata basis as part of a confirmed plan to ensure that "similarly situated creditors were treated equitably." *Jartran*, 886 F.2d at 870; *Oxford*, 4 F.3d at 1334; s*ee also Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206–07 (1988) (judges should not use equitable powers to violate the 'absolute priority rule' to treat similarly situated creditors equitably according to a bankruptcy plan).  The payment of attorney's fees incurred in a previous bankruptcy claim from the estate of a new bankruptcy claim fails to accomplish the Bankruptcy Code's goals of preserving the *current* estate and achieving creditor equality.  Again, Mr. Corrigan stands as a general creditor regarding the 2008 case just as Zars's other creditors who provided funds or services to him prior to his filing of the current 2008 bankruptcy case.  Furthermore, elevating the status of one general creditor over others, the purpose for which the bankruptcy judge transferred the funds, has been expressly disapproved of by the Fifth Circuit in the *Oxford Management* case.  *See Oxford*, 4 F.3d at 1308.

## B.     Whether the bankruptcy court erroneously ordered payment from the Comptroller's cash collateral.

On the next issue, the Comptroller contends that the bankruptcy court also erred in ordering payment to Mr. Corrigan because it failed to provide adequate protection for the Comptroller's cash collateral in the 2008 estate.[36]  Section 363(c)(2) provides that trustees may not use or sell cash

---

[35]*Contra* Tr. 20.

[36]Appellant's Br. 17.

collateral without the consent of the creditor holding the security or the leave of the court.  11 U.S.C.

§ 363(c)(2).  If the trustee uses cash collateral with court approval, Section 363(e) demands that

> at any time, on request of an entity that has an interest in the property used, sold, or leases, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection.

11 U.S.C. § 363(e).  Adequate protection for such a creditor holding a secured interest or cash

collateral would include cash payments, additional or replacement liens, or any relief that would

provide the "indubitable equivalent" of the interest.  11 U.S.C. § 361; 3 COLLIER ON BANKRUPTCY

¶ 363.05 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

     Previously, the bankruptcy court acknowledged the secured interest held by the Comptroller

in the 2008 estate when Mr. Zars sought to use funds held by the trustee to pay a bond and new

counsel.[37]  When the court granted the motion, it also provided adequate protection for the

Comptroller's cash collateral in the form of "post-petition liens and security interests in all accounts,

contract, inventory, equipment and general intangibles" held by Mr. Zars or his companies.  *Id.*  This

was proper protection under the Bankruptcy Code.  11 U.S.C. § 361(2) (non-depreciating substitute

liens are adequate protection for the use of cash collateral).

     The Court agrees with the appellant that the bankruptcy court did not address the same issue

of adequate protection when it considered Mr. Corrigan's application for compensation.[38]  The

bankruptcy court provided no statement or order addressing the issue of adequate protection when

the court ordered funds moved out of the 2008 estate.  The Code imposes a mandatory duty on the

---

[37]R. Item 16.

[38]The issue of lack of adequate protection for cash collateral is preserved in Record Item 2 ¶¶ 12–13.

bankruptcy court to condition the use of cash collateral by the trustee.  *See In re Winn's Stores*, 177

B.R. 253, 258 (Bankr. W.D. Tex. 1995); *In re Goode*, 235 B.R. 584, 590 (Bankr. E.D. Tex. 1999)

(authorization of the use of cash collateral can be granted only when the creditor's interest is

somehow adequately protected); *see generally* 3 COLLIER ON BANKRUPTCY ¶ 363.05(2).

Furthermore, the trustee or debtor-in-possession bears the burden of providing this proof of adequate

protection for the secured interest holder.  11 U.S.C. § 363(p).

Based upon the above analysis, the bankruptcy court erred when it failed to address the

Appellant's objection.  Ultimately, after all, protection for cash collateral may be a moot issue in this

case because the court cannot order the use of estate funds from the 2008 case to pay Mr. Corrigan's

compensation for the 2007 case.  Therefore, the Court reserves judgment on any further Section 363

matters until the bankruptcy court has the opportunity to reconsider this case in accordance with this

ruling.

**C.      Whether the bankruptcy court abused its discretion in granting counsel's fee request
         without requiring disclosures according to Bankruptcy Code § 329 and Rule 2016(b)**.

Section 329(a) of the Bankruptcy Code imposes a duty on all attorneys connected with a

bankruptcy case to "file with the court a statement of the compensation paid or agreed to be paid"

for any services rendered the bankruptcy estate.  Section 329(b) grants the bankruptcy court the

power to "cancel any such agreement" if the compensation "exceeds the reasonable value of any such

services."  Federal Rule of Bankruptcy Procedure 2016(b) implements Section 329 by requiring

those seeking compensation for services from the estate to frequently file "an application setting

forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2)

the amounts requested."  FED. R. BANKR. P. 2016(b).  Rule 2016 is a mandatory and continuous

requirement that imposes on the attorney seeking compensation the burden of proving the

14

reasonableness of any fees through full and timely disclosure.  *In re Evangeline Refining*, 890 F.2d 1312, 1326 (5th Cir. 1989).  *See generally* 3 COLLIER ON BANKRUPTCY ¶ 329.02.

Mr. Corrigan filed two such 2016(b) statements: one for a flat fee of $4,200 in the 2007 case, the second for a flat fee of $4,200 in the 2008 case.  He never amended these fee statements or filed new statements concerning the extra work he performed in the 2007 case until he filed a Rule 2016(a) application for compensation in 2009.[39]  When Mr. Corrigan filed that application for compensation, he requested $18,335.27 for his legal work on the 2007 case rather than the flat fee of $4,200 he had filed with the court at the time of petition.[40]

The Appellant acknowledges that bankruptcy courts have discretion to determine whether to award attorney's fees and to determine the reasonable amount of those fees.  *See Evangeline*, 890 F.2d at 1325; *In re Scarlet Hotels*, 392 B.R. 698, 701 (B.A.P. 6th Cir. 2008).  But the Appellant contends that the court abused that discretion in granting Mr. Corrigan's application for compensation in this case due to his failure to file timely, accurate Rule 2016(b) statements until 2009.[41]  This Court will only overturn compensation determinations upon finding an abuse of discretion, which arises when (1) the bankruptcy judge fails to apply the proper legal standard, or (2) bases an award on findings of fact that are clearly erroneous.  *Id.* at 1325.

Appellant cites numerous cases to suggest that the bankruptcy judge in this case did not follow the appropriate legal standard.[42]  The Court agrees with the Comptroller that, certainly, part

---

[39]Tr. 47.

[40]R. Item 1.

[41]Appellant's Br. 22.

[42]*See id.* at 21–22.

of the judge's discretion in these matters includes the power to deny attorney's fees or order their disgorgement when attorneys do not file Rule 2016(b) statements as the Code requires.  *See, e.g., Prudhomme*, 43 F.3d at 1003 (bankruptcy court has discretion to order disgorgement of fees as a sanction for nondisclosure); *In re Berg*, 356 B.R. 378, 384 (Bankr. E.D. Pa. 2006) (decision to sanction for even inadvertent transgressions of the reporting requirements lies within the discretion of the bankruptcy court); *In re All Cases Musher*, 387 B.R. 669, 676 (Bankr. W.D. Pa. 2008) (court sanctioned counsel's misconduct by ordering disgorgement of 'carve-out' fees she had obtained from her clients without prior court approval).  However, Appellant points to no provision of the Code that overrides the judge's discretionary powers and mandates that he or she *must* deny any applications for fees where the attorney failed to abide by Section 329.  In fact, as Appellee indicates, Section 529 may authorize those seeking administrative expenses to "tardily file such a request if permitted by the court for cause."  *See In re Grabill*, 983 F.2d 773, 777 (7th Cir. 1993) ("conceivably" § 529 would allow compensation in cases where it would be highly inequitable to deny it to those who rendered services to the estate).  An attorney who has failed to abide by Rule 2016 has lost his *right* to compensation, but the bankruptcy judge still has the discretion to authorize an application for an amount of compensation tailored to the circumstances of the case.  *In re Fricker*, 131 B.R. 932, 944 (Bankr. E.D. Pa. 1991) (bankruptcy court justified in ordering disgorgement of all fees for failure to file compensation reports, but ordered only $1,000 disgorgement in light of counsel's vigorous efforts on behalf of debtor); *see also Musher*, 378 B.R. at 676 (recounting that some attorneys are able to successfully petition for additional fees where the bankruptcy judges are unable to fairly monitor disclosure requirements).

Furthermore, as the Fifth Circuit explained, with a fee application "sufficiently detailed and

16

accurate, in conjunction with any proceeding in connection therewith and the record of the case, a court can make an independent evaluation as to what level of fees are actual, necessary and reasonable." *Evangeline*, 890 F.2d at 1326.  Here, Mr. Corrigan's application for compensation contained a detailed and accurate accounting for his service.[43]  The application and hearing on it included a detailed billing hours statement and other information concerning the three factors the court is called on to examine under Section 330(a) when determining the compensation due officers of the estate: the time spent on services, the rates charged for them, and whether those services were beneficial to the bankruptcy case.  *Id*.  Mr. Corrigan included not only the work actually undertaken in the 2007 case, but also the market billing rate for bankruptcy attorneys in his application.  *Id.*  These provided a factual basis for the court to make an informed decision regarding the nature, reasonableness and value of his services.  *See generally* 3 COLLIER ON BANKRUPTCY ¶ 330.02[1].  At the hearing on the application, where the Chapter 13 trustee also endorsed Mr. Corrigan's fee amount as reasonable, the bankruptcy judge concluded the attorney's fees to be reasonable and necessary to protect the debtor.[44]  Based on this content from the application and hearing, the Court finds that the bankruptcy judge had a factual basis for approving $18,335.28 as reasonable compensation for Mr. Corrigan's work on the 2007 case and, therefore, was not clearly erroneous.

Mr. Corrigan may have been untimely in filing his 2016(a) application, but none of his conduct rose to the level of malfeasance or duplicity towards the debtor in the view of the bankruptcy judge.[45]  Mr. Corrigan did not extract fees from the debtor without the court's knowledge, file an

---

[43]R. Item 1.

[44]Tr. 51.

[45]The bankruptcy judge stated at the hearing that "attorneys for debtors in Chapter 13 case are always free to ask for additional fees" Tr. 52.  As the Comptroller points out, Mr. Corrigan

incomplete application, or otherwise attempt to deceive the bankruptcy court. This fact distinguishes the current case from those cited by Appellant in which the bankruptcy court ordered sanctions and denial of compensation. *See, e.g., Prudhomme* at 1002 (firm consciously failed to disclose a retainer fee and well as contingency interests in debtors cause of actions in its application); *Musher*, 378 B.R. at 671–72 (court ordered disgorgement of $5,859.48 'carve-out' fees from attorney whose misconduct had already caused the court to appoint substitute counsel for her prior bankruptcy clients); *In re Downs*, 103 F.3d 472, 479–80 (6th Cir. 1996) (attorney not only "affirmatively" concealed his fee agreements, but also represented both creditors and debtors in the bankruptcy proceedings); *In re Davila*, 210 B.R. 727, 733 (Bankr. E.D. Tex. 1996) (attorney kept no records at all of work performed for debtor and did not meet any of the *Johnson* factors entitling attorneys to compensation). Violations of Section 329 and Rule 2016 are serious and warrant sanction, but bankruptcy courts have the discretion to mitigate penalties. *See Fricker*, 131 B.R. at 942–43 (court emphasized that sanctions are justified for any laxity or failure in timely filing of accurate fee applications, but the court mitigated penalties for an otherwise diligent attorney in the case). In light of this discretion, the Court affirms the bankruptcy court's finding that Mr. Corrigan is entitled to a pre-petition claim in the amount indicated.

### Conclusion

Having considered the parties' briefs and the record, the decision of the bankruptcy court to grant Appellee's application for compensation is hereby REVERSED. The Court AFFIRMS the

---

waited 15 months to ask for his fees and failed to update his reports in 6 pleadings, while the Rule 2016 suggests applications should be amended within 14 days of performing additional work or signing additional compensation agreements. Appellant's Br. 22 (citing FED. R. BANKR. P. 2016(c)). Ultimately, the bankruptcy court is correct in that if such fees are reasonably necessary, as found here, the court can grant them since there is no set deadline for filing of 2016(a) applications. Tr. 53.

bankruptcy court's determination of the amount of compensation due to Mr. Corrigan.  This case is

REMANDED to the Bankruptcy Court.

It is so ORDERED.

SIGNED this 27th day of July, 2010.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE